UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| PAUL F. SOARES,<br><br>    Plaintiff,<br><br>V.<br><br>CLYDE BOYD,<br>ROBERT SKEANS,<br>NATURAL RESOURCES & ENERGY, a<br>Kentucky Limited Liability Company,<br>and JOHN DOES<br><br>    Defendants. | CIVIL ACTION NO. 7:17-150-KKC<br><br><br>ORDER AND OPINION |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the Defendants' Motion to Set Aside Default Judgments and Motion to Dismiss. (DE 78). For the reasons stated below, the Defendants' Motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

At its core, the dispute in this case stems from a contract between Kentucky Minerals Limited ("KML"), the Lessor, and Natural Resources & Energy Limited Liability Company ("Natural Resources"), the Lessee. (DE 1-1 at 1.) The contract provides that KML seeks to sell its working interest in 900 acres known as "Vinson Properties" to Natural Resources in exchange for $700,000 to be paid in accordance with the agreement. At the time of contract, Paul Soares was the president of KML, and Clyde Boyd was the president of Natural Resources. (DE 1-1 at 7.)

Soares filed a Complaint on September 27, 2017 alleging claims for actual fraud, lost profits, breach of contract, conversion, and personal injury against Clyde Boyd, Robert

1

Skeans, Natural Resources, and Does 1-50. (DE 1-1.) Soares also filed a Motion for Leave to Proceed in forma pauperis, which this Court granted. (DE 8-9). Accordingly, the Court ordered the Deputy Clerk in the Pikeville Clerk's Office to prepare a Service Packet for each of the named Defendants and send it to the United States Marshall Service ("USMS") in Lexington Kentucky. (DE 10.) The USMS was then ordered, within 40 days of the order, to send a Service Report to the Pikeville Clerk's Office, to be filed in the record, stating whether service had been accomplished for each Defendant. The order went on to state that if the Defendant is "served by certified mail, the Service Report shall include (i) a copy of the green card showing proof of service or (ii) a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist." (DE 10 at 2.)

The Pikeville Clerk's Office prepared the Service Packets for each Defendant and delivered them to the USMS to effectuate service. (DE 11-12). The USMS attempted to effectuate service by FedEx Express Saver, which did not require any signature from the recipient. The Summons for Natural Resources and Boyd were returned executed via FedEx on December 13, 2017. (DE 13 and 14). The Summons for Skeans was returned unexecuted by the USMS. (DE 15). Following this attempt at service, Soares hired the Sheriff's Office of Floyd County, who personally served Skeans. (DE 34 at 4.) Additionally, Soares, himself, personally mailed a copy of the Complaint and Summons by certified mail. (DE 34 at 1-3.)

Soares's Complaint went unanswered, and he moved for entry of default against each Defendant. (DE 19, 20, and 36). The Clerk entered default against all three Defendants. (DE 21, 22 and 37). Soares then moved for default judgement against Boyd and Natural Resources, and this Court, in accordance with the Federal Rules of Civil Procedure, granted his motion. (DE 28). Soares also filed a motion for default judgement against Skeans, which remains pending before the Court. (DE 62).

Shortly thereafter, this Court received its first communication from the Defendants styled as a Motion to Set Aside Default Judgments and Motion to Dismiss, in which they collectively assert improper service of process and lack of subject matter jurisdiction. (DE 78). Based on the current pleadings, this Court finds it has subject matter jurisdiction under 28 U.S.C. § 1332 simply because Soares is a citizen of California, the Defendants are citizens of Kentucky, and the amount in controversy exceeds $75,000. However, pursuant to Fed. R. Civ. P. 12(h)(3), the Court may reconsider this issue at any time. Regarding the improper service argument, after examining the effectuated service of the Defendants, this jurisdiction's service of process rules, and requirements for in forma pauperis ("IFP") plaintiffs, the Court finds that each Defendant was improperly served.

## II. ANALYSIS

**A. Improper service.**

Boyd, Natural Resources, and Skeans did not receive proper service of process under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 4(e) provides that an individual is served by (1) delivering a copy of the summons and complaint to the individual personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process; or (4) any method permitted by state law in the state where the action is pending. Fed. R. Civ. P. 4(h) provides that a corporation must be served by (1) delivering a copy of the summons and complaint to an officer, managing, general agent, or any other agent authorized by appointment or law to receive service of process and by also mailing a copy of each to the defendant; or (2) any method permitted by the state's law.

Kentucky law provides that a defendant can be served (1) through personal delivery, to the defendant or his agent, by a person authorized to deliver service; or (2) by registered or

certified mail, return receipt requested. Ky. R. Civ. P. 4.01(1)(b), 4.04(2). "Service by registered mail or certified mail is complete only upon delivery of the envelope. The return receipt shall be proof of the time, place, and manner of service." Ky. R. Civ. P. 4.01(1)(a). Service shall be made upon a corporation by serving an officer, managing agent, or any other agent authorized by appointment or by law to receive service on its behalf. Ky. R. Civ. P. 4.04(5). In Kentucky, service may be made on a corporation via certified mail only if it is served to an officer, managing agent, or any other agent authorized by appointment in accordance with Ky. R. Civ. P. 4.04(5). *See* Ky. R. Civ. P. 4.01, 4.04. *See also Oyekunle v. Morgan & Pottinger, P.S.C.*, No. 3:14-CV-00401-TBR, 2014 WL 6977819, at *2 (W.D. Ky. Dec. 9, 2014). Process is effectively delivered to a person only when it is placed within his reach and he accepts it. *Fleishman v. Goodman*, 252 S.W.2d 691 (1934).

Several courts have further elaborated on what constitutes effective service by certified mail in Kentucky. Under Kentucky law, delivery by certified mail is accomplished only if the defendant, or his agent, personally signs for the letter when it arrives. *Treat v. Shedlofsky*, No. 3:10-CV-00745-R, 2012 WL 122561, at *5 (W.D. Ky. Jan. 17, 2012); *See also, e.g., Fleet v. Commonwealth of Kentucky Cabinet for Health & Family Servs.*, No. 3:15-CV-00476-JHM, 2016 WL 1241540, at *7 (W.D. Ky. Mar. 28, 2016) (There is a lack of valid service where a return receipt is signed by someone other than intended recipient or agent.); *King v. Taylor*, 803 F. Supp. 2d 659, 668 (E.D. Ky. 2011) rev'd on other grounds 694 F.3d 650 (6th Cir. 2012) (Service of process was unquestionably defective where the Plaintiff attempted to serve an individual by mail and it was signed for by a person that was neither the intended recipient nor agent thereof.); *Mitchell v. Money*, 602 S.W.2d 687 (Ky. Ct. App. 1980) (Court held that service of process through certified mail was not sufficient to bind a decedent's estate when it was sent to the decedent's address and was signed for by his wife.); *Douglas v. Univ. of*

4

*Kentucky Hosp.*, No. 2006-CA-002149-MR, 2008 WL 2152209, at *3 (Ky. Ct. App. May 23, 2008) (Court ruled there was no service where the signatory was not the intended recipient.).

In the present case, Soares did not comply with Fed. R. Civ. P. 4(e)(2) in serving Boyd or Fed. R. Civ. P. 4(h)(1)(B) in serving Natural Resources. Soares did not attempt personal service on either Defendant in accordance with the federal rules. It appears as if Soares attempted to serve each according to Kentucky law pursuant to Fed. R. Civ. P. 4(e)(1). But Soares also failed to comply with Kentucky law. Soares's only attempt to serve Boyd and Natural Resources was by FedEx Express Saver, which provided a return receipt but required no signature on behalf of the recipient. (DE 13-14). The receipts indicate that the Service Packets were "delivered," but they explicitly state "NO SIGNATURE REQUIRED." (DE 13 at 4 and DE 14 at 4.) Service by FedEx without a signature is not sufficient under Kentucky law. *See Treat*, 2012 WL 122561 at *5. Moreover, without a signature, it is impossible to know whether the proper person or entity even received the Service Packet. Accordingly, the Court finds that neither Boyd nor Natural Resources were effectively served.

Soares also did not effectively serve Skeans. Soares first attempted to serve Skeans by Federal Express Saver with a return receipt, but no signature required. The Summons was returned unexecuted due to an incorrect address. (DE 15). Soares then, himself, mailed a copy of the Summons and Complaint via certified mail to Skeans. (DE 34). Simultaneously, he hired the Sheriff's Office of Floyd County to personally serve Skeans. (DE 34 at 4.) Both attempts are insufficient.

Fed. R. Civ. P. 4(c) governs who is permitted to effectuate service. It states that service is made by "any person who is at least 18 years old and *not a party* (emphasis added)." Soares is a "party" to this action, and therefore he cannot effectively serve any of the Defendants. Accordingly, Soares's attempt to serve Skeans himself by certified mail is insufficient.

Additionally, the USMS was required to serve all Defendants on behalf of Soares because he is an IFP plaintiff. 28 U.S.C. § 1915(d) states that where a plaintiff is proceeding in forma pauperis, "the officers of the court shall issue and serve all process, and perform all duties in such cases." Here, the USMS did not effectively serve Skeans.

Generally, the plaintiff bears the burden for appointing an appropriate person to serve a copy of his complaint and the summons upon a defendant. *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). However, for IFP plaintiffs, once reasonable steps have been taken to identify for the court the defendants named in the complaint, the burden shifts to the USMS to obtain his or her current address and to properly effectuate service. *Id.*; *Treat*, 2012 WL 122561 at *6. Here, Soares took the proper steps to effectuate service on all the Defendants. The USMS attempted to serve the Defendants, but its efforts were deficient under the law.

Soares—because he is an IFP plaintiff—will not be penalized for this failure to properly effectuate service, and his action will not be dismissed at this time. *See Byrd*, 94 F.3d at 219-20. Instead, the Court will redirect the Pikeville Clerk's Office to issue a Summons for each of the named Defendants, and the USMS for the Eastern District of Kentucky will be directed to serve, in compliance with Federal and Kentucky law, the named Defendants with the Summons and Complaint on Soares's behalf. Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

**B. Setting aside the entries of default and default judgements.**

Fed. R. Civ. P. 55(d) states that "the court may set aside an entry of default for good cause, and it may set aside a final default judgement under Fed. R. Civ. P. 60." Lack of notice and sufficient service of process intrinsically results in a lack of due process and effectively renders a judgment void. *In re Allen*, 417 B.R. 850, 854 (E.D. Ky. 2009); *Insituform Technologies, Inc. v. AMerik Supplies, Inc.*, 588 F.Supp.2d 1349, 1352 (N. D. Ga. 2008) ("Where service of process is insufficient, the entry of default is void and must be set aside.").

Good cause to set aside an entry of default exists where a defendant pleads a failure to effect service by the plaintiffs. *Reading v. United States*, 506 F.Supp.2d 13, 17 (D.D.C. 2007).

A court may set aside a default judgment under Fed. R. Civ. P. 60 upon consideration of (1) whether the default was willful; (2) whether the set aside would prejudice the plaintiff; and (3) whether the defendant has a meritorious defense. *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir. 1983). However, entry of default and default judgments must be set aside, without reference to the *United Coin Meter* factors, where service was improper. *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 352 (6th Cir. 2003) (Court held that because the defendant established that service was improper, "we need not weigh the three factors a court considers when setting aside an entry of default."). *See Empire Servs., Inc. v. Kanza*, No. 92-54-94, 1993 WL 241450, *3 (6th Cir. July, 1 1993). ("Therefore, if service of process was not proper, the court must set aside the default judgment.").

In the present case, the Clerk entered default against each Defendant, and default judgements were entered against Boyd and Natural Resources. (DE 21, 22, 28, and 37.) The Court has determined that all Defendants were improperly served. Accordingly, pursuant to Fed. R. Civ. P. 55 and 60, this Court must set aside the entries of default for Boyd, Natural Resources and Skeans, as well as, the default judgments entered against Boyd and Natural Resources.

**C. Motion to Dismiss.**

The Defendants have also requested this Court to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(7). Based on the information provided to the Court at this time, it will not dismiss the case.

**1. Subject matter jurisdiction.**

7

The Court currently has subject matter jurisdiction over this action. 28 U.S.C. § 1332 states that federal courts have jurisdiction over cases where there is complete diversity of citizenship and the amount in controversy exceeds $75,000. The Court finds that it does have subject matter jurisdiction simply because Soares is a citizen of California, the Defendants are all citizens of Kentucky, and the amount in controversy exceeds $75,000. (*See* DE 1.)

The Defendants assert that Soares is not the "proper plaintiff" in this case because the contract on which the suit is based is between two Kentucky Corporations—KML and Natural Resources. (DE 78 at 2.) Fed. R. Civ. P. 19(a) provides that a party must be joined if (1) in that person's absence, the court cannot accord complete relief among existing parties; (2) disposing of the action in the person's absence would impair or impede that person's ability to protect their interest; or (3) disposing of the action would leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Joinder is not feasible, however, when it would destroy subject matter jurisdiction. Consequently, Fed. R. Civ. P. 19(b) states that "if a person is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."

The problem is, the Court does not have sufficient information to determine whether KML is a required party. Soares, in his Complaint, asserts that "on or about April 2017, KML assigned its interests in the contract and the claims against Defendants to [Soares]." (DE 1 at 1.) The Court also notes that the subject contract contains an "Assignment" provision, which states "Neither Lessor nor Lessee, whether voluntarily or by operation of law, may assign, mortgage, sublet, or otherwise transfer this agreement or any part hereof without the prior written consent of the other party, which shall not be unreasonably withheld." (DE 1-1 at 6.) The Court has not been provided with any such assignment. If the rights to the contract were validly assigned in accordance with the contract provisions, then KML would not be a

8

necessary party to this action. But if the rights were not validly assigned, KML would be a necessary party. Then, the Court would need to determine under Fed. R. Civ. P. 19(b) whether KML should be joined, which could destroy this Court's subject matter jurisdiction. Until the Court has the requisite information to determine whether the rights to the contract have been validly assigned, it cannot make a determination whether KML should be joined under Fed. R. Civ. P. 19(b). Accordingly, because the current parties to the complaint are completely diverse and the amount in controversy exceeds $75,000, the Court retains subject matter jurisdiction at this time.

**2. Failure to state a claim upon which relief can be granted.**

The Defendants also ask the Court to dismiss the case under Fed. R. Civ. P. 12(b)(7) for failure to state a claim upon which relief can be granted because Soares states in his complaint that he filed for personal bankruptcy in January 2017. (DE 82 at 16.) The Defendants contend that this cause of action became a part of his bankruptcy estate, and therefore, it does not belong to Soares.

The Bankruptcy Code provides that "all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case" become part of the bankruptcy estate. 11 U.S.C. § 541. For a Court to determine when a cause of action arises, there must be a pre-petition, actionable violation. *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 462 (6th Cir. 2013). Pre-petition conduct or facts alone will not root a claim in the past. *Id*.

In the present case, it is unclear from Soares's Complaint whether there was a pre-petition actionable violation of the subject contract. Soares states in his Complaint—which was filed in September 2017—that "most [contract] payments remain unpaid." (DE 1 at 2.) He also states the Defendant's violations forced him to file personal bankruptcy in January 2017, but he does not state when specifically those violations occurred. (DE 1 at 2-3.) The Court is also unaware of the current status of his bankruptcy—the Court does not know if

9

his plan was confirmed, whether he complied with his plan, or whether his debts have been discharged. Moreover, this entire analysis would, of course, all be contingent on whether the rights to the subject contract were even assigned to Soares in the first place. Accordingly, until the Court can determine who the proper plaintiff is, it cannot consider whether this cause of action should have become a part of his bankruptcy estate.

Based on the foregoing, the Court will not dismiss the case at this time. The Court is cognizant that the Defendants have all retained new counsel since this Motion to Dismiss was filed. (DE 113 and 115). Defendants' new counsel should thoroughly review the record in this case and determine an appropriate course of action to respond. Should counsel choose to file a substantive motion to dismiss, it should address the merits of the case and cite appropriate authority for all arguments therein.

**D. Other Pending Motions.**

There are several other pending motions in this case. Soares has filed a motion for default judgment against Skeans. (DE 62). This motion is denied based on the analysis above.

Soares has filed three different motions for writs of execution relating to collecting on the default judgments entered against Boyd and Natural Resources. (DE 72, 73, and 74). Since each of these deals with collecting on the Default Judgments being set aside by the Court, they will all be denied as moot.

Soares has also filed a motion for leave to file a response to the Defendants' Motion to dismiss and set aside judgments (DE 78), and he requests an evidentiary hearing. (DE 86). While that motion was pending, he filed his "response" in the form of a motion to strike or deny Defendants' Motion to dismiss and set aside judgment. (DE 87). The Court considers Soares's "response" below. Accordingly, his motion for leave to file a response (DE 86) is granted to the extent he seeks to file such response.

In his motion to strike or deny Defendants' Motion to dismiss and set aside judgment, Soares asserts that the Defendants did not comply with FRCP 6 because they did not file their supporting memorandum together with their Motion. (DE 86 and 87 at 1-2.) However, the result here would be the same even without reference to the memorandum in support of the Defendants' Motion. The Defendants' Motion really includes all arguments which are expounded upon in the memorandum in support. (*See* DE 78 and 82). Soares also argues that the Defendants did not provide any notice of their Motion by electronic means. (DE 87 at 3-4.) But this Court has already specifically ordered that Soares cannot use the ECF system. (DE 10 and 80). Soares further argues that the Defendants did not file any proof of service showing that they mailed the Motion on a specific date. (DE 87 at 3.) This argument is misplaced. The Defendants' Motion contains a certificate of service stating that a copy of the Motion was mailed to Soares, but the date is not filled in by the attorney. (DE 78 at 6.) Certificates of service are "certifying" that service has been completed. Accordingly, certificates of service actually should not be filled in until *after* such task has been completed—in this case, after the Motion had been mailed out to Soares. Soares then asserts that the Defendants did not properly serve their Motion. (DE 87 at 3.) Again, Soares's argument is misplaced—he is confusing the Federal Rules of Civil Procedure applicable to serving summons and those applicable to pleadings. The Defendants' Motion is a pleading, and therefore, Fed. R. Civ. P. 5 governs. Fed. R. Civ. P. 5(b)(2)(C) provides that service of a pleading is accomplished when it is mailed to the person's last known address, and "service is complete upon mailing." Accordingly, once the Defendants' attorney mailed the pleading, service was complete. Finally, Soares asks the Court to issue sanctions against Attorney Daniel Combs for failure to "follow the requirements of the ecf system, federal rules of civil procedure and the local rules." (DE 87 at 5.) But a simple, cursory reading of Fed. R. Civ. P. 11 reveals that a motion for sanctions must be made separately from any other motion and

must describe the specific conduct in violation. Soares has not done so. Based on the foregoing, Soares' motion to strike or deny Defendants' Motion to dismiss and set aside judgment is denied.

Soares's next motion asks the court to strike the filed affidavit and answers of garnishees, compel response by garnishees, order Christene Layne to not interfere with orders of the Court, and requests sanctions based on such filings. (DE 88). Soares also filed a motion to compel response by another garnishee and requested sanctions against them as well. (DE 90). Since the Court is setting aside the default judgments against all Defendants, accordingly, all of these requests relating to enforcing such judgments are denied as moot.

Finally, the Defendants have filed a motion for extension of time to file answers to interrogatories because the Court had not yet resolved their Motion (DE 78) to set aside default judgments and dismiss the case. (DE 96). The Court ruled above that the default judgments are set aside, and the case will not be dismissed at this time. Accordingly, the Defendants' motion for an extension of time to file answers to interrogatories is granted, and the Defendants shall have thirty-days from the entry of this Order to respond to Soares's interrogatories.

### III. CONCLUSION

Based on the foregoing, the Court hereby **ORDERS** as follows:

(1) The Defendants' Motion to Set Aside Default Judgments and Dismiss (DE 78) is **GRANTED** in part and **DENIED** in part. To the extent that the Motion seeks to set aside the Clerk's entries of default, against Clyde Boyd, Robert Skeans, and Natural Resources and Energy, LLC, and default judgements, against Clyde Boyd and Natural Resources and Energy, LLC, it is **GRANTED**. To the extent that the Motion seeks to dismiss the case, it is **DENIED**.

(2) The Plaintiff's Motion for Default Judgment against Robert Skeans (DE 62) and Motions for Writs of Execution (DE 72, 73, and 74) are all **DENIED AS MOOT**.

(3) The Plaintiff's Motion for Leave to File Response to Defendants' Motion to Dismiss and Set Aside Judgments and Request for an Evidentiary Hearing (DE 86) is **GRANTED** in part and **DENIED** in part. To the extent the Plaintiff's Motion seeks leave to file a response, it is **GRANTED**. To the extent the Plaintiff's Motion requests an evidentiary hearing, it is **DENIED**.

(4) The Plaintiff's Motion to Strike or Deny Defendants' Motion to Dismiss and Set Aside Judgment (DE 87) is **DENIED**.

(5) The Plaintiff's Motion to Strike Affidavit and Answer of Garnishees, Compel Response by Garnishee, for Order Requiring Christene Layne to Not Interfere in the Orders of this Court, and Request for Sanctions (DE 88) and Motion to Compel Response by G & R & Pawn Co., LLC and Request for Sanctions (DE 90) are **DENIED AS MOOT**.

(6) The Defendants' Motion for Extension of Time to Answer Interrogatories (DE 96) is **GRANTED**. Defendants shall have thirty-days from the entry of this Order to respond to Soares's interrogatories.

(7) The Deputy Clerk in the Pikeville Clerk's Office shall prepare a "Service Packet" for the following Defendants:

   a. Natural Resources & Energy, LLC;
   b. Robert Skeans; and
   c. The Estate of Clyde Boyd.

(8) Each Service Packet shall include:

a. a completed summons form;

    b. the complaint (DE 1) and its attached exhibit (DE 1-1);

    c. this Order; and

    d. a completed USM Form 285.

(9) The Pikeville Deputy Clerk shall send the Service Packets to the United States Marshall Service ("USMS") in Lexington, Kentucky.

(10) The USMS shall serve all three Service Packets on the Attorney for the Defendants:

> Stephen W. Owens
> P.O. Box 1426
> Pikeville, KY 41502

(11) The USMS is responsible for ensuring that the Defendants are successfully served with process. In the event that an attempt at service upon any defendant is unsuccessful, the USMS shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

(12) Within forty (40) days of the date of entry of this Order, the USMS Office shall send a Service Report to the Pikeville Clerk's Office, which the Deputy Clerk shall file in the record, stating whether service has been accomplished with respect to all Defendants.

    a. If served by certified mail, the Service Report shall include:

        i. a copy of the green card showing proof of service and signature of the recipient; or

        ii. a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

    b. If personally served, the Service Report shall indicate:

        i. that personal service was successful; or

        ii. a statement explaining why the defendant could not be served and what efforts are being taken to accomplish personal service.

Dated March 11, 2019.

*[Signature]*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY