# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# PIKEVILLE

| | |
|---|---|
| PAUL F. SOARES,<br><br>     Plaintiff,<br><br>V.<br><br>ESTATE OF CLYDE BOYD,<br>ROBERT SKEANS,<br>NATURAL RESOURCES & ENERGY, a<br>Kentucky Limited Liability Company,<br>and JOHN DOES<br><br>     Defendants. | CIVIL ACTION NO. 7:17-150-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the Court's own motion to dismiss this case for lack of subject matter jurisdiction. For the reasons stated below, this case is **DISMISSED WITHOUT PREJUDICE**, and all pending motions (DE 149, 154, 155, 159, and 160) are **DENIED AS MOOT**.

## I. BACKGROUND

The dispute in this case stems from a contract (the "KML/Natural Resources Contract") between Kentucky Minerals Limited ("KML"), the Lessor, and Natural Resources & Energy Limited Liability Company ("Natural Resources"), the Lessee. (DE 1-1 at 1.) The contract provides that KML seeks to sell its working interest in 900 acres known as "Vinson Properties" to Natural Resources in exchange for $700,000 to be paid in accordance with the agreement. At the time of contract, Paul Soares was the president of KML, and Clyde Boyd

1

was the president of Natural Resources. (DE 1-1 at 7.)  Both KML and Natural Resources were Kentucky corporations.[1]

Soares, a resident of California, filed a Complaint on September 27, 2017 alleging claims for actual fraud, lost profits, breach of contract, conversion, and personal injury against Clyde Boyd, Robert Skeans, Natural Resources, and Does 1-50. (DE 1.). Soares also filed a Motion for Leave to Proceed in forma pauperis, which this Court granted. (DE 8, 9). Accordingly, the Court ordered the Deputy Clerk in the Pikeville Clerk's Office to prepare a Service Packet for each of the named Defendants and send it to the United States Marshall Service ("USMS") to effectuate service.  The USMS attempted to effectuate service on Natural Resources and Boyd by FedEx Express Saver.  The USMS was unable to serve Skeans, so Soares hired the Sheriff's Office of Floyd County to serve him. (DE 34 at 4.)  Additionally, Soares personally mailed a copy of the Complaint and Summons by certified mail. (DE 34 at 1-3.)

Soares's Complaint went unanswered, and he moved for entry of default against each Defendant.  (DE 19, 20, and 36).  The Clerk entered default against all three Defendants. (DE 21, 22 and 37).  Soares then moved for default judgement against Boyd[2] and Natural Resources, and this Court, in accordance with the Federal Rules of Civil Procedure, granted his motion.  (DE 28).

Shortly thereafter, the Defendants filed a motion to set aside default judgments and motion to dismiss.  (DE 78.) In the motion, Defendants asserted improper service of process and lack of subject matter jurisdiction.  The Court determined that the Defendants were not properly served.  Accordingly, the Court set aside the default judgements and ordered proper service to be effectuated on the Defendants.  The Court additionally found that it had subject

---

[1] KML and Natural Resources have since been dissolved.

[2] Shortly after the entry of default judgment, Boyd became the Estate of Clyde Boyd. (*See* DE 38.)

matter jurisdiction under 28 U.S.C. § 1332 but stated that it could reconsider the issue under Fed. R. Civ. P. 12(h)(3) "at any time." (DE 117 at 3.) The Court stated that "[b]ased on the current pleadings, this Court finds it has subject matter jurisdiction under 28 U.S.C. § 1332 simply because Soares is a citizen of California, the Defendants are citizens of Kentucky, and the amount in controversy exceeds $75,000." The Court advised the parties that it did not have sufficient information to determine whether KML is a required party to the action because of the alleged assignment of the contract from KML to Soares. The Court stated:

> Soares, in his Complaint, asserts that "on or about April 2017, KML assigned its interests in the contract and the claims against Defendants to [Soares]." The Court also notes that the subject contract contains an "Assignment" provision, which states "Neither Lessor nor Lessee, whether voluntarily or by operation of law, may assign, mortgage, sublet, or otherwise transfer this agreement or any part hereof without the prior written consent of the other party, which shall not be unreasonably withheld." The Court has not been provided with any such assignment. If the rights to the contract were validly assigned in accordance with the contract provisions, then KML would not be a necessary party to this action. But if the rights were not validly assigned, KML would be a necessary party. Then, the Court would need to determine under Fed. R. Civ. P. 19(b) whether KML should be joined, which could destroy this Court's subject matter jurisdiction. Until the Court has the requisite information to determine whether the rights to the contract have been validly assigned, it cannot make a determination whether KML should be joined…

(DE 117 at 8-9 (citations omitted).)

Following the Court's opinion and order setting aside the default judgments, Soares filed a series of motions. The Defendants maintained that the Court does not have subject matter jurisdiction. In resolving the motions, the Court stated that it must determine whether it has subject matter jurisdiction over the litigation. The Court stayed the case and ordered Soares to produce the contract-assignment so that the Court could resolve the subject matter jurisdiction issue. (DE 147.)

3

In response, Soares filed a questionable document[3] purported to be the contract-assignment. (DE 150-1.) The document is titled "Agreement for Assignment of Creditor's Rights." In the document, Soares, acting as president for KML, essentially assigns the rights to collect monies due under the KML/Natural Resources Contract, both past and future, to Soares individually. The document provides that Soares, in exchange for the rights to collect monies due under the KML/Natural Resources Contract, will relieve KML from paying monies due to him for "management services" rendered between January 1, 2012 and June 30, 2015. (DE 150-1 at 2.) Despite Soares's representation in his Complaint that the KML/Natural Resources Contract was assigned in April 2017, (DE 1 at 1 n.1), the contract-assignment is dated June 30, 2015.[4]

Defendants responded to the purported contract-assignment by asking the Court to declare KML a necessary party because the KML/Natural Resources Contract required written consent prior to assignment and Soares did not produce any written consent. (DE 151.)

Soares replied asserting that "no written consent of Defendants is necessary under the law in the case at bar." (DE 152-1 at 2.) Soares states that such is true "even if there is a non-assignment clause in any contract." (DE 152 at 2.)

Despite the questionable legitimacy of the purported contract-assignment, the Court finds that no part of the KML/Natural Resources Contract was properly assigned to Soares because no written consent was given by the Defendants in accordance with the terms of the contract.

---

[3] The purported contract-assignment appears to have signature blocks that are copied and pasted into the document. (*See* DE 150-1 at 4.)

[4] The Court also notes that this litigation was originally pursued in a case filed in the Eastern District of Kentucky on November 30, 2015. The complaint in that case states that the KML/Natural Resources Contract was assigned in July 2015. *Soares v. Boyd et al.*, 0:15-cv-108-HRW.

Accordingly, the Court does not have subject matter jurisdiction because it appears that Soares does not have standing to bring the suit, and instead, KML is the proper plaintiff. As such, the case will be dismissed without prejudice for lack of subject matter jurisdiction.

## II. ANALYSIS

### A. The KML/Natural Resources Contract collection rights were not validly assigned to Soares in his individual capacity.

The contract-assignment from KML to Soares is invalid because no written consent was provided, and the KML/Natural Resources Contract explicitly required written consent prior to assignment of the agreement or any part thereof. Specifically, the contract provided "[n]either Lessor nor Lessee, whether voluntarily or by operation of law, may assign, mortgage, sublet, or otherwise transfer this agreement or any part hereof without the prior written consent of the other party, which shall not be unreasonably withheld." (DE 1-1 at 6.)

Under Kentucky contract law, "[i]n the absence of an ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Industries Inc.*, 103 S.W.3d 99, 106 (Ky.2003). Although contracts are generally assignable, Kentucky courts have long held that anti-assignment clauses in contracts are enforceable unless they are against public policy. *See, e.g., Am. Gen. Life Ins. Co. v. DRB Capital, LLC*, 562 S.W.3d 916 (Ky. 2018); *Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 687 (Ky. 2012), as modified on denial of reh'g (Dec. 20, 2012); *Pulaski Stave Co. v. Miller's Creek Lumber Co.*, 138 Ky. 372, 128 S.W. 96, 101 (1910) ("[I]t seems to be well settled that a contract is generally assignable, unless forbidden by public policy or the contract itself...."); *Invensys, Inc. v. Henry Vogt Mach. Co.*, No. 2007-CA-000606-MR, 2008 WL 2696828, at *8 (Ky. Ct. App. July 11, 2008); *Managed Health Care Assocs., Inc. v. Kethan*, 209 F.3d 923, 928 (6th Cir. 2000). Kentucky contract law regarding anti-assignment

5

provisions is consistent with the general contract principles outlined in Restatement (Second) of Contracts § 317 (1981), which states:

> A contractual right can be assigned unless
>
> (a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or
>
> (b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or
>
> (c) *assignment is validly precluded by contract*.

Restatement (Second) of Contracts § 317 (1981) (emphasis added).

Here, neither party asserts that the language of the assignment provision is ambiguous. The assignment provision provides: "[n]either Lessor nor Lessee, whether voluntarily or by operation of law, may assign, mortgage, sublet, or otherwise transfer this agreement or any part hereof without the prior written consent of the other party, which shall not be unreasonably withheld." (DE 1-1 at 6.) The language is clear—no part of the agreement is assignable or transferrable by either party without the prior written consent of the other party. There is no evidence of any other intent of the parties. Additionally, there is no evidence that Soares, acting as president of KML, ever sought written consent from Natural Resources in assigning the collection rights of the KML/Natural Resources Contract to himself individually. In fact, Soares does not dispute that written consent was never provided. Instead, Soares asserts that written consent is not necessary. (DE 152-1 at 2.) The Court disagrees. The explicit, unambiguous contract language requires written consent prior to transfer or assignment of any part of the contract. Accordingly, the assignment provision is enforceable unless it is against public policy, which is not contended by Soares.

In consideration of the applicable law, the Court finds that the purported contract-assignment tendered by Soares is invalid. Soares, as president of KML, did not obtain the

written consent of Natural Resources before assigning the rights of the KML/Natural Resources Contract to himself individually, as explicitly required by the contract. The assignment provision is enforceable, and accordingly, the purported contract-assignment lacking written consent is invalid.

**B. The Court lacks subject matter jurisdiction to hear the case.**

Since the collection rights to the KML/Natural Resources Contract were not validly assigned to Soares, it appears that Soares has no standing to bring suit in his individual capacity against the Defendants. Instead, KML is the proper party with an interest in this litigation. Accordingly, the Court finds that it does not have subject matter jurisdiction over the case.

"Standing goes to a court's subject matter jurisdiction." *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) (citation, internal quotation marks, and brackets omitted). "Plaintiffs have the burden of establishing standing," and "[i]f they cannot do so, their claims must be dismissed for lack of subject matter jurisdiction." *In re Foreclosure Cases*, 521 F. Supp. 2d 650, 653 (S.D. Ohio 2007) (citing *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606-07 (6th Cir. 2007)). There are three elements to "the irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) —

> [f]irst, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly... traceable to the challenged action of the defendant, not... the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id*. at 560-61 (citations, internal quotation marks, and brackets omitted).

The "injury" here is an injury to KML, not Soares. The Complaint brings claims of actual fraud, lost profits, breach of contract, conversion, and personal injury against the Defendants. Each of the claims are premised on injuries experienced by KML, and the facts alleged in the

7

Complaint are based on interactions between KML and Natural Resources, not interactions between Soares in his individual capacity and Natural Resources.  Additionally, the fraud claim is based on alleged fraud perpetuated by Natural Resources on KML, the lost profits alleged are lost profits of KML, and the breach of contract, conversion, and personal injury claims are derived from a contract executed between KML and Natural Resources. (*See* DE 1.)

Soares, in his individual capacity, has not suffered an injury in fact.  Considering that the KML/Natural Resources Contract was not properly assigned to Soares, Soares does not have standing to bring this action in his individual capacity.  Instead, KML, a Kentucky corporation, is the proper plaintiff.  The Court cannot substitute KML for Soares or otherwise add KML to this litigation as doing so would destroy diversity jurisdiction.  Accordingly, the Court does not have subject matter jurisdiction to consider the claims.

Under Fed. R. Civ. P. 12 (h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  "The appropriate remedy for the invalid assignment [is] dismissal of the complaint without prejudice." *Davis v. Scott*, 320 S.W.3d 87 (Ky. 2010).  Thus, since the purported contract-assignment is invalid, this action will be dismissed without prejudice.

**C.  Pending motions**.

There are a series of pending motions in this case, including motions stating that the matter has been removed to the United States Bankruptcy Court for the Northern District of California.[5]  All of the motions will be denied as moot because the Court lacks subject matter jurisdiction.

---

[5] Soares has filed for bankruptcy in the Northern District of California. (DE 158.)

Regarding the motions mentioning removal of this litigation to the Bankruptcy Court for the Northern District of California and asking the Court to transfer the case file, "the Court must confirm its own jurisdiction before sending [a case] to bankruptcy. *Muratore v. Darr*, 375 F.3d 140, 147–48 (1st Cir. 2004) (holding that district courts cannot refer cases to bankruptcy court if the district court lacks subject matter jurisdiction)." *McKinsey v. Sargent*, 442 B.R. 567, 570 (E.D. Ky. 2011). Similarly, "a court without subject matter jurisdiction cannot transfer a case to another court under 28 U.S.C. § 1404(a)." *Integrated Health Serv. of Cliff Manor, Inc. v. THCI Co.*, 417 F.3d 953, 957 (8th Cir. 2005).

This Court does not have subject matter jurisdiction over this litigation. Thus, the Court will not forward the case file or otherwise transfer the case to the Bankruptcy Court for the Northern District of California.

### III. CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** as follows:

(1) This action is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction;

(2) All pending motions (DE 149, 154, 155, 159, and 160) are **DENIED AS MOOT**;

(3) The Clerk of the Court shall **STRIKE** this matter from the Court's active docket; and

(4) A judgment will be entered contemporaneously with this order.

Dated March 25, 2020.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

9